UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| Gregory A. Miller, M.D., | ) | |
|---|---|---|
| Plaintiff, | ) | C/A No.: 0:24-cv-1212-SAL |
| v. | ) | **COMPLAINT** |
| | ) | (*Jury Trial Demanded*) |
| MagMutual Insurance Company, | ) | |
| Defendant. | ) | |

COMES NOW Plaintiff Gregory A. Miller, M.D., by and through his undersigned counsel, complaining of Defendant MagMutual Insurance Company. Plaintiff would allege as follows:

## PRELIMINARY STATEMENT

1.  This is an insurance bad faith action in which Plaintiff, Gregory A. Miller, M.D., seeks relief due to the Defendant's failure to honor its obligations under an insurance policy in violation of South Carolina law, including the covenant of good faith and fair dealing in every insurance contract, and the provisions of Section 38-59-20 of the South Carolina Code of Laws.

## PARTIES

2.  Plaintiff Gregory A. Miller, M.D. ("Plaintiff" or "Dr. Miller"), at all times material and relevant to this action, was a citizen and resident of York County, South Carolina.

3.  Defendant MagMutual Insurance Company ("Defendant" or "MagMutual"), upon information in belief, is incorporated in the State of Georgia.

## JURISDICTION AND VENUE

4.  Plaintiff brings this claim under diversity jurisdiction, 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000.

5.      This Court has personal jurisdiction over Defendant as a substantial part of the acts and/or omissions giving rise to Plaintiff's claims occurred in this district and litigation in this forum does not offend the traditional notions of fair play and substantial justice. Further, Defendant conducts substantial business in South Carolina and the insurance contract at issue is subject to S.C. Code § 38-61-10.

6.      Venue is proper in the District of South Carolina, under 28 U.S.C. § 1391(b)(2), in that Plaintiff is a citizen of this state and district at all times relevant to this action, and a substantial part of the acts and/or omissions giving rise to Plaintiff's claims occurred in this district.

## FACTUAL BACKGROUND

7.      Defendant MagMutual Insurance Company was Dr. Miller's insurer and provided a defense in a case involving allegations of professional negligence where the plaintiff alleged injuries involving shoulder dystocia suffered while Dr. Miller was providing obstetrical medical care, in an action titled <u>Angela Patton et al. v. Gregory A. Miller, M.D. and Rock Hill Gynecological and Obstetrical Associates, P.A.</u>, Civil Action No. 2009-CP-46-05195 (hereinafter "the Patton Case").

8.      The parties were contractually bound by Defendant's Policy Number PSL 18004407, which provided coverage to the Plaintiff both individually and as a physician of the practice Rock Hill Gynecological and Obstetrical Associates, P.A., with the collective limits of the policy available to the Plaintiff of two million dollars ($2,000,000).

9.      In 2021 MagMutual claims analyst Sandy Angelly was Plaintiff's primary point of contact while the underlying claim and litigation was proceeding.

10.     On December 19, 2021, Dr. Miller sent an email to Defendant MagMutual's claim analyst, Sandy Angelly, requesting assurance against the possibility of a judgment over his two-million-

dollar limit and expressing his concerns about personal exposure because of the unpredictability of jury trials. A copy of the email is set forth below.

> Dear Ms. Angelly,
> We talked recently with Ashby about my case which involves a posterior shoulder dystocia. I did nothing wrong but jury trials are unpredictable. I am considering asking for a settlement because of the possibility of a judgement over my 2 million limit. I am worried about my personal asset risk exposure. At my age, nearing retirement, I can't afford a large settlement against my personal finances. I need some reassurances. Do you have time to discuss these issues tomorrow? Thank you.
>
> Sincerely,
> Dr. Greg Miller

11. On December 20, 2021, Dr. Miller discussed his concerns with Sandy Angelly and was adamant that he wanted to settle the Patton case. Although Sandy Angelly attempted to convince Dr. Miller about the merits of the defense of the case, Dr. Miller was not convinced, remained extremely concerned about his personal financial exposure, and firmly reiterated that it was his desire to settle the Patton case.

12. On December 20, 2021 after a phone call with MagMutual and his counsel, Ashby Davis, Esquire, Dr. Miller sent a follow up email requesting that Defendant settle the case up to the limits of his malpractice coverage. A copy of the email is set forth below.

> Dear Ms. Angelly,
> Per our discussion earlier today, I would like MagMutual to settle my malpractice case Angela Patton, et al vs. Gregory A. Miller et al up to the limits of my malpractice coverage. Please send the settlement consent paperwork for my signature. My address is 1104 Greene St, Beaufort, SC 29902. Thank you for your assistance in this matter.
>
> Sincerely,
> Dr. Greg Miller

13. On December 21, 2021, Dr. Miller signed and dated the form authorizing Defendant MagMutual to settle the Patton case.

14. The same day, Sandy Angelly sent an email to Dr. Miller refusing his request to settle the case and explaining that MagMutual's internal trial committee agreed to take the matter to trial as they believed it was a defensible case.

15. Upon information and belief, MagMutual made no efforts and made no settlement offers to the plaintiffs in the Patton case before or during trial, even after Dr. Miller expressly requested that his insurance company take steps to protect him from potential personal financial exposure.

16. During the trial of the case, MagMutual had no representatives present to personally monitor the progress of the proceedings and refused to even consider a high/low agreement when contacted by Mr. Davis during the trial, which would have served to protect Dr. Miller from personal exposure of an excess judgment.

17. Upon information and belief, the trial was a disaster for Dr. Miller, and the jury returned a verdict against Dr. Miller for the minor plaintiff's injuries, and ultimately judgment was entered against him on March 8, 2022 in the amount of $4,682,789.27, and post judgment interest is accruing on the judgment at the rate of 7.25%, or approximately $28,291 per month.

18. Subsequent to the entry of judgment, in light of the substantial verdict, MagMutual has not made any reasonable good faith efforts to resolve the claim and has refused to post the appeals bond to protect the Plaintiff from collection efforts.

19. This judgment is currently on appeal, but Plaintiff has been unable to post the appeal bond ordered by the trial court and the judgment remains outstanding at this time.

20. MagMutual represents to its insureds, including to the Plaintiff, via its website that "Our core precepts remain steadfast and our commitment to them unwavering: Always put you, our Policy Owners first" and that "Doing the best thing for our policy owners is always the best thing for Mag Mutual."

**FOR A FIRST CAUSE OF ACTION**
(Bad Faith/Negligence/Gross Negligence/Recklessness)

21. A binding insurance policy ("the Policy") existed between Plaintiff and Defendant at all times material hereto.

22. Defendant had a duty under the Policy to attempt in good faith to effect prompt, fair, and equitable settlement of claims, and under well-settled South Carolina law,[1] an insurer may not conduct settlement negotiations with an eye solely to its own interests and in disregard of its insured's rights and interests. Further, MagMutual is bound, under its contract of indemnity and in good faith, to sacrifice its own interests in favor of those of its insured.

23. Defendant breached this duty to Plaintiff by failing to make a settlement offer despite Dr. Miller's multiple requests to settle the case and reasonable concerns about a verdict exceeding the limits of his malpractice coverage.

24. Defendant further breached its duties to Plaintiff by failing to make reasonable efforts after judgment to resolve the claim and has refused to post the full amount of the appeals bond leaving Plaintiff exposed to collection efforts during the pendency of the appeal.

25. These failures by Defendant constitute a breach of the covenant of good faith and fair dealing that arises in every contract, including the Policy issued to Plaintiff by Defendant, and were willful, wanton, and in reckless disregard of its obligations to the Plaintiff.

26. As a direct and proximate result of Defendant's actions and failure to honor its insuring obligations, Plaintiff has suffered exactly the damages he sought to avoid by settling the case, a judgment of $4,682,789.27, which continues to accrue interest, and which is well in excess of his coverage limits.

27. As a result of Defendant's bad faith, negligence, gross negligence, recklessness, and willful and wanton conduct in the handling of this claim Plaintiff is entitled to actual, consequential, and punitive damages, in an amount to be proven at trial.

---

[1] See *Tyger River Pine Co. v. Maryland Casualty Co.*, 170 S.C. 286, 170 S.E. 346 (1933).

## FOR A SECOND CAUSE OF ACTION
(Statutory Bad Faith Violations)

28. The foregoing paragraphs are realleged as if fully set forth herein verbatim.

29. Defendant acted in bad faith in its failure to honor its obligations to Plaintiff under the Policy. In so acting, Defendant violated Section 38-59-20 of the South Carolina Code of Laws.

30. Specifically, Plaintiff is informed and believes:

   (a) there exists a mutually binding contact of insurance between Plaintiff and Defendant;

   (b) Plaintiff requested that Defendant make a settlement offer on behalf of Plaintiff;

   (c) Defendant refused to make any settlement offers;

   (d) Defendant's refusal is the result of the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing in the contract; and

   (e) the refusal has caused damage to Plaintiff, the insured.

31. As a direct and proximate result of Defendant's actions and failure to honor its insuring obligations, Plaintiff has suffered the damages he sought to avoid by requesting his carrier settle the Patten case, specifically a judgment of $4,682,789.27 dollars, well in excess of his coverage limits.

32. As a result of Defendant's bad faith, Plaintiff is entitled to actual, consequential, and punitive damages, in an amount to be proven at trial.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff prays the Court to enter judgment against Defendant MagMutual and award Plaintiff the following:

   A. Compensatory damages in an amount to be determined by a jury;

   B. Punitive damages in an amount to be determined by a jury;

C. Costs and fees associated with this action, including reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and any other applicable authority; and

D. Such other, further, and general relief as the Court may deem just and proper.

Respectfully submitted,

s/ William R. Padget
William R. Padget (Fed. ID 09466)
Christina M. Brown (Fed. ID 13487)
HHP Law Group, LLC
924 Gervais Street
Columbia, South Carolina 29201
(803) 400-8277
(803) 845-4900 Fax
bill@hhplawgroup.com
christina@hhplawgroup.com

Harry L. Goldberg (Fed. Id. No 2122)
Finkel Law Firm, LLC
PO Box 1799
Columbia, SC 29202
(803) 765-2935
(803) 252-0786 Fax
hgoldberg@finkellaw.com
Attorneys for the Plaintiff

Columbia, South Carolina
March 12, 2024