IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Gregory A. Miller, M.D., ) | Case No. 0:24-cv-01212-JDA |
| ) | |
| Plaintiff, ) | |
| ) | **OPINION AND ORDER** |
| v. ) | |
| ) | |
| MagMutual Insurance Company, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court on a motion to dismiss for lack of jurisdiction or, in the alternative, to stay the proceedings filed by Defendant MagMutual Insurance Company ("MagMutual"). [Doc. 11; *see* Docs. 13; 14; 15]. The motion is ripe for review.

### **BACKGROUND**[1]

Plaintiff, Gregory A. Miller, M.D. ("Dr. Miller"), is a citizen of South Carolina and a physician at Rock Hill Gynecological and Obstetrical Associates, P.A. [Doc. 10 ¶¶ 2, 8.] MagMutual is a corporation incorporated in the State of Georgia. [*Id.* ¶ 3.] MagMutual insured Dr. Miller under an insurance policy bearing policy number PSL 18004407 (the "Policy"), with collective limits of $2,000,000, and is defending him in *Angela Patton et al. v. Gregory A. Miller, M.D. and Rock Hill Gynecological & Obstetrical Associates, P.A.*, No. 2009-CP-46-05195, which is an action alleging that he committed professional negligence where the plaintiff alleged injuries involve shoulder dystocia that occurred while Dr. Miller was providing obstetrical care (the "Underlying Action"). [Doc. 10 ¶¶ 7–8.]

Dr. Miller alleges that he wanted to settle the Underlying Action for an amount

---

[1] The facts in the Background Section are taken directly from the Amended Complaint.

within the Policy limits, that he expressed this desire to MagMutual, and that he signed and dated a form authorizing MagMutual to settle the Underlying Action on December 21, 2021, but that MagMutual declined to settle the case because it believed the case was defensible.  [*Id.* ¶¶ 10–14.]

Dr. Miller alleges that the jury in the Underlying Action returned a verdict against him, and the court entered judgment against him on March 8, 2022, for $4,682,789.27, which is accruing post-judgment interest at the rate of 7.25%; that the judgment is currently on appeal, but he has not been able to post an appeal bond as ordered by the trial court; and that MagMutual has been unwilling either to make reasonable good faith efforts to resolve the case or post the bond.  [*Id.* ¶¶ 17–19.]

Dr. Miller filed the current action on March 12, 2024, and filed an Amended Complaint on May 16, 2024.  [*Id.*; Doc. 1.]  He asserts a single cause of action against MagMutual for bad faith, negligence, gross negligence, and recklessness.  [Doc. 10 ¶¶ 21–30.]  He alleges that MagMutual had a duty to "attempt in good faith to effect prompt, fair, and equitable settlement of claims" in the Underlying Action.  [*Id.* ¶ 23.]  He alleges that MagMutual breached its duty to him by failing to make settlement offers after he asked MagMutual to settle the case, by failing to make any reasonable settlement offers after the trial, and by refusing to post the appeal bond.  [*Id.* ¶¶ 24–25.]  He also alleges that MagMutual breached its duty to him by failing to have a representative monitor the progress of the trial in the Underlying Action, failing to acknowledge with reasonable promptness claims and opportunities for negotiations before and during the trial, and unreasonably failing to pay or settle all claims.  [*Id.* ¶ 26.]  Dr. Miller alleges that these actions constitute a breach of the covenant of good faith and fair dealing.  [*Id.* ¶ 27.]

He seeks actual, consequential, and punitive damages. [*Id.* ¶ 29.]

MagMutual has moved to dismiss for lack of subject-matter jurisdiction or, in the alternative, for a stay of proceedings, arguing that this case is not yet ripe because, under South Carolina law, a claim for bad-faith refusal to settle accrues only after an excess judgment is entered against the insured and the judgment no longer may be challenged on appeal. [Doc. 11 at 2, 3–9.] MagMutual maintains that because the excess judgment at issue here is currently on appeal, Doctor Miller's claim in this action is unripe under South Carolina law, and this case is not justiciable. [*Id.*]

## APPLICABLE LAW

**The Rule 12(b)(1) Standard**

A motion to dismiss under Rule 12(b)(1) examines whether the complaint fails to state facts upon which jurisdiction can be founded. Fed. R. Civ. P. 12(b)(1). The court may dismiss a case for lack of subject-matter jurisdiction on any of the following bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Johnson v. United States*, 534 F.3d 958, 962 (8th Cir. 2008) (internal quotation marks omitted).

Generally, challenges to jurisdiction under Rule 12(b)(1) may be raised "in one of two ways." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). A facial attack, which is what is presented here, questions whether the allegations in the complaint "allege facts upon which subject matter jurisdiction can be based"; the court analyzes a facial attack as it would a motion to dismiss under Rule 12(b)(6) such that "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint

3

alleges sufficient facts to invoke subject matter jurisdiction." *Id.* (internal quotation marks omitted). On the other hand, a factual attack challenges the truthfulness of the jurisdictional allegations in the complaint, *id.*, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment," *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). To prevent dismissal, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.*; *see also Dira v. Deutch*, No. 97-1119, 1998 WL 276236, at *1 (4th Cir. May 26, 1998) ("When such 'factual' challenges are asserted, a trial court may go beyond the allegations of the complaint, weigh the evidence, and satisfy itself as to its jurisdiction to hear the case."). A dismissal should be granted only in those instances in which "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768.

**The Law Relating to Jurisdiction**

Federal courts are courts of limited jurisdiction, "constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998). There is no presumption that a federal court has jurisdiction over a case, *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999), and a plaintiff must allege facts essential to show jurisdiction in his pleadings, *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *see also Dracos v. Hellenic Lines, Ltd.*, 762 F.2d 348, 350 (4th Cir. 1985) ("[P]laintiffs must affirmatively plead the jurisdiction of the federal court."). As such,

4

Federal Rule of Civil Procedure 8(a)(1) requires that a complaint provide "a short and plain statement of the grounds for the court's jurisdiction."

The Constitution limits this Court's jurisdiction to the adjudication of actual cases and controversies. U.S. Const. art. III, § 2, cl. 1; *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (per curiam). "Doctrines like standing . . . and ripeness are simply subsets of Article III's command that the courts resolve disputes, rather than emit random advice." *Bryant v. Cheney*, 924 F.2d 525, 529 (4th Cir. 1991). "[The] ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993). "Ripeness is peculiarly a question of timing." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985) (alteration and internal quotation marks omitted). The ripeness doctrine's "basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Id.* (internal quotation marks omitted).

"In reviewing a ripeness claim, [the Court] consider[s] (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 191 (4th Cir. 2018) (internal quotation marks omitted). "An issue is not fit for review if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Retail Indus. Leaders Ass'n v. Felder*, 475 F.3d 180, 188 (4th Cir. 2007) (internal quotation marks omitted).

## DISCUSSION

"Because this is a diversity case, the court must apply South Carolina law in determining whether [Dr. Miller's claim against MagMutual is] ripe." *Ross Dev. Corp. v. Fireman's Fund Ins. Co.*, 809 F. Supp. 2d 449, 461 (D.S.C. 2011). In the absence of

5

South Carolina law, this Court must "predict how the state's highest court would rule on an unsettled issue." *Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co.*, 514 F.3d 327, 329 (4th Cir. 2008).

South Carolina law recognizes, "in addition to a breach of contract action, a separate tort action for an insurer's bad-faith refusal to pay benefits under an insurance policy, whether for a first-party claim or a third party claim." *In re Mt. Hawley Ins. Co.*, 829 S.E.2d 707, 713 (S.C. 2019). Accordingly, "a liability insurer owes its insured a duty to settle a personal injury claim covered by the policy, if settlement is the reasonable thing to do." *Trotter v. State Farm Mut. Auto. Ins. Co.*, 377 S.E.2d 343, 349 (S.C. Ct. App. 1988). "An insurer who unreasonably refuses or fails to settle a covered claim within the policy limits is liable to the insured for the entire amount of the judgment obtained against the insured regardless of the limits contained in the policy." *Doe v. S.C. Med. Malpractice Liab. Joint Underwriting Ass'n*, 557 S.E.2d 670, 674 (S.C. 2001).

At issue here is the question of when, exactly, a claim for bad-faith refusal to settle with a third party accrues under South Carolina law and, specifically, whether the pendency of an appeal of the excess judgment against the insured prevents accrual of the bad-faith claim. Although the Court has not found a decision of a South Carolina court addressing this question, the Supreme Court of Delaware has explained that "[t]he majority rule of courts in other states is that a bad-faith failure-to-settle claim accrues when the excess judgment becomes final and non-appealable."[2] *Connelly v. State Farm*

---

[2] *Connelly* explained:

> The majority rule—that a bad-faith failure-to-settle claim against an insurer accrues only once there is a final and non-appealable judgment—advances several important policy

6

*Mut. Auto. Ins. Co.*, 135 A.3d 1271, 1276 (Del. 2016) (collecting cases); *see Morgan v. State Farm Mut. Auto. Ins. Co.*, 488 P.3d 743, 747–48 (Ok. 2021) ("[C]ourts in other jurisdictions have determined that [a claim against an insurer for bad-faith failure to settle] does not accrue until the adverse or excess judgment in the underlying case is final and non-appealable."). The leading insurance law treatises agree. *See, e.g.,* 17 Jordan R. Plitt et al., Couch on Insurance § 236:103 (3d ed. June 2024 Update) ("An action against an insurer for failure to settle a claim does not accrue and the statute of limitations does not begin to run until the judgment against the insured is final. . . . Accordingly, the statute of limitations on an action against an insurer for negligent failure to settle a claim against an insured does not begin to run until all appeals of the judgment against the insured have been exhausted."); Stephen S. Ashley, Bad Faith Actions Liability & Damages § 7:6 (2d ed. Nov. 2023 Update) ("Most courts have held in third-party cases that the insured's

---

objectives. First, the majority rule reduces the possibility of a conflict of interest between the insurer and the insured. If we were to [hold that such a claim accrued earlier], an insured would have to bring a cause of action against the insurer while expecting the insurer to zealously defend her interests in the underlying insurance claim. For its part, the insurer would have to expect the insured to fulfill her obligation to participate in the defense of the underlying claim while the insured's own bad-faith claim against the insurer is stayed. Second, the majority rule protects insurers from "bad faith claims for failing to settle even the most frivolous claims if the third-party claimant was willing to settle within the policy limits." Finally, the rule saves the insured litigation costs that may turn out to be unnecessary if the court does not order an excess judgment. As important, the majority rule avoids wasting judicial resources because it prevents the court from having to address premature claims before the insured can plead damages and the court can assess the reasonableness of the insurer's refusal to settle.

*Id.* at 1277–78 (footnotes omitted).

cause of action accrues and the limitations period begins to run when the third party's judgment against the insured becomes final."); *see also* J.H. Cooper, Annotation, *Limitation of Action Against Liability Insurer for Failure to Settle Claim or Action Against Insured*, 68 A.L.R.2d 892, 894 (1959) ("The courts are generally in accord that an action against a liability insurer for failure to settle a claim or action does not accrue and the pertinent statute of limitations does not begin to run at least until the judgment in favor of the insured person against the insured is final."). On the other hand, "a minority of jurisdictions have extended the time for accrual of a bad-faith failure-to-settle claim even further and held that a claim accrues only when the insured actually pays the excess judgment." *Connelly*, 135 A.3d at 1276 n.17.

Under either the majority or the minority rule, a claim for bad-faith refusal to settle has not accrued if an appeal of the underlying judgment remains pending.[3] With liability

---

[3] Dr. Miller cites three cases that he suggests indicate that a claim for bad-faith refusal to settle becomes ripe under South Carolina law "at the entry of the underlying excess judgment" despite the pendency of any appeal of the judgment. [Doc. 13 at 5.] The Court is not persuaded. The first case, *Andrews v. Central Surety Insurance Co.*, 271 F. Supp. 814, 821 (D.S.C. 1967), does not purport to address the issue of how or whether the pendency of an appeal of the underlying judgment would affect the accrual of a claim for bad-faith refusal to settle. Another of the cited cases, *Permanent General Assurance Corp. v. Moore*, 341 F. Supp. 2d 579 (D.S.C. 2004), held that no "actual controversy" was presented within the meaning of the Declaratory Judgment Act when the underlying actions had been filed seeking an excess judgment against the insured but there had been no judgment rendered. *See id.* at 581–82. That case is not much help to Dr. Miller because it did not present with the issue of whether the rendering of a judgment would be sufficient for the bad-faith claim to accrue if the judgment were still subject to appeal. The final cited case, *Spivey Co. v. Travelers Insurance Co.*, 407 F. Supp. 916 (E.D. Pa. 1976), is the only of the three cases that lends some support to Dr. Miller's position. In that case, the court determined, on facts analogous to the present action, that the case presented an "actual controversy" within the meaning of the Declaratory Judgment Act. *Id.* at 917–18. However, *Spivey* appears to be an outlier, and a very old one at that. If presented with the issue at hand, the Court predicts that the Supreme Court of South Carolina would follow the rule embraced by the majority of courts and the leading treatises

continuing to be contested in the Underlying Action, it is still true that "a jury could find for [Dr. Miller in that case] or render a verdict within the policy limits." *Permanent General Assurance Corp. v. Moore*, 341 F. Supp. 2d 579, 582 (D.S.C. 2004). Accordingly, Dr. Miller's claim for bad-faith refusal to settle is not yet ripe, the issues here are not fit for judicial decision, and this action is not justiciable.[4] *Cf. Columbia Ins. Co. v. Reynolds*, 225 F. Supp. 3d 375, 382 (D.S.C. 2016) (holding that the court lacked subject-matter jurisdiction to consider an unripe claim for declaratory relief regarding an insurer's potential liability for bad-faith failure to settle because no judgment had yet been rendered in the underlying case); *D'Agostino v. Safeco Ins. Co. of Ill.*, 669 F. Supp. 3d 1187, 1191 (N.D. Fla. 2023) (dismissing a claim for bad-faith failure to settle for lack of jurisdiction because it was unripe insofar as the underlying issues of liability and damages had not yet been resolved). This action is therefore dismissed.[5]

---

on the issue and hold that a claim for bad-faith refusal to settle is unripe during the pendency of an appeal of the underlying judgment against the insured.

[4] To the extent that Dr. Miller's claim can be characterized as something broader than a refusal to settle because he alleges that MagMutual failed to have a representative present to monitor the progress of the trial and failed to post an appeal bond, his claim is unripe for the same reason, namely, that it is uncertain whether the judgment—the only injury he alleges—will survive the appeal or be executed on prior to the resolution of the appeal. *See, e.g.*, *Bowman v. Abramson*, 545 F. Supp. 227, 228 (E.D. Pa. 1982) (dismissing legal malpractice claim for lack of subject-matter jurisdiction because the underlying judgment was being appealed). In his memorandum opposing MagMutual's motion to dismiss, Dr. Miller argues that even if the judgment is reversed on appeal, there has been and will be "damage done to him personally and professionally by way of the pendency of the excess judgment." [Doc. 13 at 6.] However, Dr. Miller did not allege any injury in his Amended Complaint apart from his liability under the excess judgment. As noted, in a facial attack, such as this one, the Court considers only the allegations in the applicable complaint. *See Kerns*, 585 F.3d at 192.

[5] The Court notes that Dr. Miller argues that "the statute of limitations on his claims likely began to run at the entry of excess judgment against him[,] rendering the filing of this action necessary to preserve those rights." [Doc. 13 at 5 n.2.] However, "limitations would not begin to run until the claims became ripe." *Mayor of Baltimore v. Actelion*

9

**CONCLUSION**

Based on the above, MagMutual's motion to dismiss or, in the alternative, to stay the proceedings [Doc. 11] is GRANTED and the case is DISMISSED for lack of jurisdiction.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

June 24, 2024
Greenville, South Carolina

---

*Pharms Ltd.*, 995 F.3d 123, 126 (4th Cir. 2021); *see* 17 Couch on Insurance § 236:103; Bad Faith Actions Liability & Damages § 7:6. Thus, dismissal of this action should cause little hardship to the parties.